UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

BILLY ROY THOMAS                      CASE NO.  6:21-CV-02316

VERSUS                                JUDGE ROBERT R.
                                      SUMMERHAYS

U S COMMISSIONER OF SOCIAL            MAGISTRATE JUDGE CAROL B.
SECURITY                              WHITEHURST

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be affirmed.

## Administrative Proceedings

Claimant, Billy Roy Thomas, fully exhausted his administrative remedies

before filing this action in federal court. He filed an application for disability

insurance benefits and an application for supplemental security income, alleging

disability beginning on May 10, 2018. His applications were denied. He then

requested a hearing, which was held on April 13, 2020 before Administrative Law

Judge Steven Rachal. (Rec. Doc. 17-1, p. 33-65). The ALJ issued a decision on June

4, 2020, concluding that Claimant was not disabled within the meaning of the Social

Security Act from the claimed disability onset date through the date of the decision.

(Rec. Doc. 17-1, p. 14-25). Claimant requested that the Appeals Council review the

ALJ's decision, but the Appeals Council found no basis for review. (Rec. Doc. 17-

1, p. 6). Therefore, the ALJ's decision became the final decision of the

Commissioner for the purpose of judicial review. *Higginbotham v. Barnhart*, 405

F.3d 332, 336 (5th Cir. 2005). Claimant then initiated this action, seeking review of

the Commissioner's decision.

## **Summary of Pertinent Facts**

Claimant was born on August 19, 1980. He was 37 years old on the alleged

disability onset date and 39 years old at the time of the ALJ's decision. He has a high

school diploma and last worked in 2018 at Ville Platte Iron Works manufacturing

oil field equipment. He was self-employed doing landscaping and lawn care

maintenance for several years prior to that. His past employment history also

includes several years working as a laborer in pipeline and construction. (Rec. Doc.

17-1, p. 39-47).

He alleged that he has been disabled since May 10, 2018 due to high blood

pressure, right-sided weakness from TIA, and vision impairment. The medical

records in the record reveal the following pertinent history:

- He presented on July 1, 2017 to Mercy Regional for hypertension. An imaging study of his neck due to left cervical nodule, chest pain, shortness of breath and uncontrolled hypertension showed a hypoechoic bilobed nodule. A follow up CT scan was essentially normal. (Rec. Doc. 17-1, p. 479-84).

- Claimant treated with Dr. Kevin Courville, cardiologist, for his heart issues. In September 2017, he noted his medication was controlling blood pressure and he felt better. (Rec. Doc. 17-1, p. 640).

- In a May 23, 2018 emergency room visit due to chest pain and shortness of breath, no acute cardiopulmonary abnormality was demonstrated and he was discharged with a diagnosis of chest wall pain, dyspnea, and hypertensive heart disease. (Rec. Doc. 17-1, p. 485-89).

- While incarcerated, Claimant was admitted to University Health emergency room on June 27, 2018 for right-sided tingling and blurred vision. According to the hospital notes, he was incarcerated about a month before and was pending a heart catheter before jail. He had blurred vision in the right eye which had gotten progressively worse over the prior week. He was diagnosed with acute coronary syndrome, unstable angina pectoris due to coronary arteriosclerosis, blurred vision of right eye, and cerebrovascular accident ("CVA" or stroke). He was admitted for heart catheterization and discharged back into custody on July 1, 2018. (Rec. Doc. 17-1, p. 496-540).

- Claimant treated with Dr. Jade Heinen as primary care provider beginning in May 2017. In January 2019, he reported feeling well with intermittent headaches that had been ongoing since May 2018. He also complained of bilateral knee pain which appeared arthritic in nature. He suffered from blurred vision since his June 2018 event. In March 2019, he continued with headaches rated 8/10 and complained of numbness in his right hand and leg from his knee down at night. His blood pressure was stable, and he had no CVA symptoms. His headaches were improved, and he was given ibuprofen 800. (Rec. Doc. 17-1, p. 671-78; 703-707).

- He saw eye doctor Dr. Hosea Soileau from October 2018 through January 2019 for blurry vision following his stroke, but the records are illegible. (Rec. Doc. 17-1, p. 699-701).

- On April 13, 2019, Dr. Justin Creel provided a report for Med Plus Opelousas for the purpose of providing information to the state disability office. The report indicates that Claimant had smoked years ago and had recently begun smoking one cigarette a day. His medications included gabapentin, minoxidil, atorvastatin, fueosemide, ibuprofen, nifedipine,

asa, lisinopril, doxepin, and carvedilol. The report noted the foregoing medical history with a noted history of hypertension and stroke. The physical exam was normal except to note decreased strength in the right hand, weakness in the right arm and muscular atrophy. He had difficulty doing finger-to-nose with right hand. Dr. Creel's impression was poorly controlled hypertension with right-sided retinopathy (acutely decreased with corrective lenses but preserved on contralateral side), and residual weakness of right arm and decreased coordination. He was left-hand dominant. Ultimately, Dr. Creel concluded Claimant had limited ability to reach, handle or grasp and limitations with fine movements and mild grip strength in right hand. He ambulated without difficulty or assistive devices. (Rec. Doc. 17-1, p. 713-18).

- Claimant had a neurology follow up with Dr. Tiffany Liu on May 22, 2019 due to his recent stroke and right sided weakness. He continued with blurred vision and right sided weakness with headaches occurring 2 to 3 times a week. Dr. Liu's assessment included transient ischemic attack and indicated that his current exam, in which he complained of right sided neck pain and occipital pain with occasional right sided weakness, was more suggestive of a functional weakness that was exaggerated on exam and out of proportion with actual function. She referred him to physical therapy for right sided neck pain and functional weakness. (Rec. Doc. 17-1, p. 722-25).

- Claimant did physical therapy for one month in June 2019. He requested discharge because he was unable to commit to appointments. He was discharged without having demonstrated any progress. (Rec. Doc. 17-1, p. 731-44; 757-74).

- He presented to Dr. Heinen with a headache and mildly elevated blood pressure in August 2019. The assessment included benign hypertension, morbid obesity, history of stroke, and decreased vision. Dr. Heinen adjusted his medications and concluded he was disabled due to deficits from stroke and partial blindness in the right eye. By October 2019, he was feeling well without any complaints. He was tolerating his medications well and his blood pressure was stable. (Rec. Doc. 17-1, p. 747-51).

- Claimant returned to Dr. Liu in September 2019. He was smoking every day. Dr. Liu's assessment remained the same and included TIA, high BMI, essential hypertension, mixed hyperlipidemia, functional weakness,

4

cervicalgia, and overweight. She concluded his current exam was still suggestive of functional weakness. He had not had time to complete physical therapy. He was to continue medications and was counseled on weight loss. (Rec. Doc. 17-1, p. 777-80).

- In December 2019 his blood pressure was elevated, and he had headache and dizziness. Dr. Heinen sent him to the emergency room for elevated readings. (Rec. Doc. 17-1, p. 752-55). Subsequent visits in early 2020 were similar, with intermittent complaints of headaches, stable blood pressure, and obesity. (Rec. Doc. 17-1, p. 792-96).

Claimant testified at the hearing that his blood pressure is usually controlled with medication. (Rec. Doc. 17-1, p. 50). He has ongoing right-side issues which once caused his leg to give out while he was driving, so he had to use his left leg to brake and pull over. His right-leg issues have also caused him to fall. He gets migraines, light-headed, and weak. (Rec. Doc. 17-1, p. 50-51). His vision in his right eye is "like a painting on the wall that's just splattered all over like different colors," and lacks peripheral vision. (Rec. Doc. 17-1, p. 58-59). He testified that he has no problems sitting down, but that he gets short of breath while walking and dizzy if standing. (Rec. Doc. 17-1, p. 51-52). He has not driven since his stroke. (Rec. Doc. 17-1, p. 53). He lives in his mother's house with his teenaged son. He gets Medicaid transport to doctors' appointments, or his sister drives him. (Rec. Doc. 17-1, p. 54-55).

On June 4, 2020, the ALJ found that Claimant was not disabled, because he is capable of light work subject to physical limitations for frequent reaching, handling, or fingering with the right, non-dominant upper extremity and that a

sufficient number of qualifying jobs existed in the national economy. (Rec. Doc. 17-1, p. 19-25). Claimant, who is proceeding pro se on appeal, appeals the ALJ's findings. He attached new records to his appellant brief consisting of updated medical records from Dr. Heinen from June 2022 (Rec. Doc. 20, p. 9-12) and April 20, 2022 correspondence from the La. Dept. of Health approving him for long-term personal care assistance (Rec. Doc. 20, p. 13-76). Although these records indicate vision impairment, dizziness, and shortness of breath, the primary underlying condition appears to be daily severe lower back and neck pain resulting in falls.

Claimant also presented new evidence with his reply brief. (Rec. Doc. 22). This evidence consists of records from University Health related to his 2018 cardiac catheterization and other records in the administrative record or previously submitted.

## Analysis

### A.    Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5ᵗʰ Cir. 1983). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* (citations omitted).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173. A court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5ᵗʰ Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts. *Scott v. Heckler*, 770 F.2d 482, 485 (5ᵗʰ Cir. 1985); *Wren v. Sullivan*, 925 F.2d 123, 126 (5ᵗʰ Cir. 1991). Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience. *Wren v. Sullivan*, 925 F.2d at 126.

**B.      Entitlement to Benefits**

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a).  *See also Smith v. Berryhill*, 139 S.Ct. 1865, 1772 (2019). Supplemental Security Income SSI provides income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled. 42 U.S.C. § 1382(a)(1) & (2).  *See also Smith v. Berryhill*, 139 S.Ct. at 1772. A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his physical or mental impairment or impairments are so severe that he is unable do his previous work and considering his age, education, and work experience, cannot participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

## C.    Evaluation Process and Burden of Proof

A sequential five-step inquiry is used to determine whether a claimant is disabled.  The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520.

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v.*

*Bowen*, 810 F.2d 1296, 1304 (5ᵗʰ Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5ᵗʰ Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5ᵗʰ Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5ᵗʰ Cir. 1987)).

**D.    The ALJ's Findings and Conclusions**

The ALJ determined at step one that Claimant has not engaged in substantial gainful activity since January 1, 2019. Although Claimant claimed disability commencing on May 10, 2018, the ALJ found that he engaged in substantial gainful activity from that time until December 31, 2018. (Rec. Doc. 17-1, p. 19-20). Claimant did not challenge this finding, which is supported by substantial evidence in the record.

At step two, the ALJ found that Claimant has the following severe impairments: residuals of transient ischemic attack (TIA), ischemic heart disease, hypertension, hyperlipidemia, loss of visual acuity, and obesity. (Rec. Doc. 17-1, p. 20). This finding is supported by substantial evidence in the record.

At step three, the ALJ found that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Rec. Doc. 17-1, p. 20-21). Claimant does not challenge this finding.

The ALJ next found Claimant had the residual functional capacity (RFC) to perform light duty work subject to limitations for frequent reaching, handling, or fingering with the right, non-dominant upper extremity and limitations for occasional exposure to extreme heat and no exposure to fumes, odors, dusts, gases or poor ventilation. He was also limited to no exposure to hazards and for frequent near acuity, far acuity, and peripheral acuity. (Rec. Doc. 17-1, p. 21-23). Claimant challenges this finding.

At step four, the ALJ found Claimant was unable to perform any past relevant work.  Claimant does not challenge this finding.

At step five, the ALJ found Claimant was capable of performing the jobs of price marker and general cashier, with a significant number of these jobs available in the national economy. Claimant challenges this finding to the extent he challenges the ALJ's RFC finding.

### E.     The Allegations of Error

Claimant, proceeding pro se, generally alleges the ALJ erred in finding him not disabled. The Court interprets Claimant's brief as a challenge to the ALJ's RFC finding, which in turn dictates the availability of qualifying jobs. The Court shall

also consider whether the Appeals Council properly disregarded evidence regarding

treatment after June 4, 2020.

### F.      Whether the Appeals Council erred in disregarding new evidence.

After the ALJ's June 4, 2020 decision, Claimant presented the following

evidence in support of his appeal to the Appeals Council and/or attached to his

appellant brief(s):

- In August 2020, Claimant presented to Cleveland Emergency Hospital after being involved in an auto accident. A lumbar xray revealed linear lucency at the right L1 transverse process which could reflect a nondisplaced fracture or congenital nonunion. A CT scan of his head revealed a 1.4 hypodense lesion within the anterior limb of the right internal capsule which appeared likely chronic related to prior ischemia. No acute abnormalities were identified. (Rec. Doc. 17-1, p. 93-95).

- Claimant began seeing Dr. Saurabh Lalan in February 2021, but the records provided are incomplete except to indicate that Claimant was referred for spinal MRIs. (Rec. Doc. 17-1, p. 90-92). Notably, a July 5, 2021 note indicates that Claimant had no falls in the prior year. (Rec. Doc. 22, p. 34).

- In March 2021, Claimant began treatment for post traumatic stress disorder at Seaside HCBS. His treatment consisted of psychosocial skills rehabilitation and community psychiatric support. It is unclear whether he underwent or declined medication management. (Rec. Doc. 17-1, p. 67-86).

- A visual test for his right eye in March 2021 at Azar Eye Clinic revealed unspecified visual field defect. Opposite sides affected may indicate an issue at the optic chiasm. He complained of sensitivity to light, which gave him headaches, and double vision. Claimant was referred to neurologist for further management. (Rec. Doc. 17-1, p. 99-100). In May 4, 2021 letter, Dr. Cheryl Duong stated that Claimant's visual acuity OD is hand motion OS is 20/80. On visual field testing, his right showed complete loss of visual field and his left eye showed a small island of vision inferior nasally.

His visual field and acuity showed visual impairment. (Rec. Doc. 20, p. 95).

- A June 9, 2022 record from Dr. Heinen submitted with Claimant's reply brief indicates Claimant began treating for hearing loss. (Rec. Doc. 22, p. 23).

Claimants are free to submit new evidence to the Appeals Council. 20 C.F.R. § 404.968(a). Such evidence is considered part of the record upon which the Commissioner's final decision is based. *Higginbotham v. Barnhard*, 405 F.3d 332, 337 (5ᵗʰ Cir. 2005). The district court must examine all of the evidence, including the new evidence, to determine whether the Commissioner's final decision to deny a claim is supported by substantial evidence. *Sun v. Colvin*, 793 F.3d 502, 510 (5ᵗʰ Cir. 2015). Newly submitted evidence is material if (1) it relates to the time period for which the disability benefits were denied; and (2) there is a reasonable probability that it would have changed the outcome of the disability determination. *Castillo v. Barnhart*, 325 F.3d 550, 551-52 (5ᵗʰ Cir. 2003) (per curiam); 20 C.F.R. § 404.970(a)(5). "[T]he new evidence must also pertain to the contested time period and not merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling." *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995). When the new evidence does not relate to the contested time period or concerns a subsequently acquired disability, the proper action is to file a new application for disability benefits based on the new condition. *Id.*

The Appeals Council found that the new evidence did not relate to the period at issue, (Rec. Doc. 17-1, p. 7). The Court agrees. The Cleveland Emergency Hospital and subsequent records relate to an auto accident, the date of which is unclear and resulted in lumbar issues subsequently acquired. To the extent the March 2021 records from Azar Eye Clinic relate to Claimant's pre-existing visual impairment following the stroke, the Court finds these records at most evidence the deterioration of a condition which, as discussed below, was not previously disabling. Therefore, Claimant must file a new application if he claims these issues now render him disabled.

G.    **Whether the ALJ's RFC finding is supported by substantial evidence in the record.**

The ALJ found Claimant is capable of performing light duty work, subject to limitations for reaching, handling, or fingering with his right, non-dominant hand, limitations for exposure to certain harmful conditions, and limitations for near, far, and peripheral acuity. (Rec. Doc. 17-1, p. 21-23). The ALJ based his finding on the above medical records showing that, although Claimant suffered a stroke in 2018 and continues to suffer from high blood pressure and loss of vision in the right eye, Claimant's blood pressure is controlled with medication and he is able to drive, prepare simple meals and chores, and manage finances. (Rec. Doc. 17-1). The ALJ further relied on two state medical examiners' opinions finding Claimant could perform light duty work with manipulative and environmental limitations (Rec. Doc.

14

17-1, p. 134-87); however, the ALJ believed additional limitations were warranted, such as those regarding Claimant's vision. Also supporting the ALJ's finding is neurologist Dr. Liu's opinion that Claimant's right-sided issues were due to functional weakness for which she recommended physical therapy; however, Claimant did not complete the recommended course of physical therapy. Dr. Liu also opined that Claimant's weakness was exaggerated on exam and out of proportion with actual function. (Rec. Doc. 17-1, p. 722-25; 731-44; 777-80).

Also persuasive, was consultative examiner, Dr. Justin Creel's report that Claimant has limitations for fine movement and mild grip strength in the right hand and that he could ambulate without difficulty or assistive devices. Notably, Claimant is left-handed. (Rec. Doc. 17-1, p. 22, relying on p. 713-18).

Regarding Claimant's visual impairment, Claimant testified that he maintains a driver's license (Rec. Doc. 17-1, p. 53-54), and the pertinent records show that he frequently traveled to Houston to care for his children. (Rec. Doc. 17-1, p. 731-44; 757-74). Dr. Creel found Claimant had right-sided retinopathy, acutely decreased with corrective lenses but preserved on contralateral side. (Rec. Doc. 17-1, p. 713-18). Otherwise, there is no evidence showing that Claimant's visual impairments or right-sided weakness impacted his functional abilities to the extent that he is incapable of performing light duty work subject to the physical limitations identified

by the ALJ. The Court finds that the ALJ's findings are thus supported by substantial

evidence in the record.

## Conclusion and Recommendation

For the foregoing reasons, this Court recommends that the Commissioner's

decision be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P.

72(b), parties aggrieved by this recommendation have fourteen days from receipt of

this report and recommendation to file specific, written objections with the Clerk of

Court.  A party may respond to another party's objections within fourteen days after

receipt of a copy of any objections or responses to the district judge at the time of

filing.

Failure to file written objections to the proposed factual findings and/or the

proposed legal conclusions reflected in the report and recommendation within

fourteen days following the date of receipt, or within the time frame authorized by

Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual

findings or the legal conclusions accepted by the district court, except upon grounds

of plain error.[1]

---

[1]    See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).

Signed in Lafayette, Louisiana, this 23rd day of August, 2022.

_____

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE